ROBERTSON, Justice
(dissenting):
With deference, I dissent. I think that the suggestion of error is well taken and ■should be sustained.
After a long, arduous and thorough trial •of all issues in the two consolidated cases, the Chancellor rendered an opinion, in part, .■as follows:
“It is apparent that from time to time throughout the years, before and after the death of Mr. McGahey, Sr., the parties discussed the acquisition of the interest of the properties that Mr. Plar-rison had inherited from his wife (Mrs. Wilda McGahey Harrison). It seems that the parties, when exercising their contract with Mr. Harrison, and to use a common expression, sort of played the matter by ear, because it is noted in the first instrument which conveyed Mr. Harrison’s interest in the Columbus Marble Works, the conveyance was not ■to Mr. T. A. McGahey, Jr. and Mrs. Altie Jones in equal parts, but the trust estate .of Mr. T. A. McGahey, Sr. was included .as a purchaser.
“After these purchases, the defendant, T. A. McGahey, Jr. purchased the interest of Fred W. Harrison in the Mc-Gahey & Jones Partnership, which was operating under the trade name of Etowah Marble & Granite Company, National Monument Company, Universal Marble & Granite Company and Commonwealth Monument Company.”
“ * * *»
“After these properties were purchased in 1959, the Court is of the opinion that further conversations were had between the defendant, T. A. McGahey, Jr., and his brother-in-law, W. L. Jones, relative to the purchase of the Moretti-Harrah stock. It is the opinion of the Cotirt that these conversations were in the nature of the previous conversations; that is, they dealt with the acquisition of this stock for and on behalf of the family.
“From the testimony in this case, the Court holds that T. A. McGahey, Jr. and W. L. Jones, acting for and on behalf of his wife, agreed to purchase the Moretti-Harrah stock. This was a rather loose agreement, and as one of the witnesses testified, the first arrangement was that if one of the parties could buy it, the other could buy an interest from them; and then on the other hand, if the other part)- bought it, then the other partner would likewise have the right to purchase an interest in this property. In all of these negotiations, no price was mentioned, no guaranty to purchase was given, and it is the opinion of the Court that this agreement is of such a nature that it is not enforceable in equity.
“It is further the opinion of the Court that the contract, not being in writing, is in violation of Section 268 of the Mississippi Code of 1942 and therefore is not enforceable.” (Emphasis added.)
The Chancellor found that these further conversations constituted a rather loose agreement, so loose in fact and “of such *534 a nature” that it would not be enforceable in equity. He found that in all of these negotiations no price was mentioned and no guaranty to purchase on behalf of Mrs. Altie McGahey Jones was given. He could have added that there was no beginning and no end of this so-called loose agreement.
I think that the Chancellor correctly found from disputed testimony that there was no agreement that could be enforced even in an equity court. I certainly could not say that the Chancellor was manifestly wrong in his decision, and this of course, would be the only ground on which this Court could reverse the decision of the Chancellor. In my opinion this Court is placed in the unenviable and untenable position of having gathered together the loose ends of loose conversations, and by pronouncing the magic words of “agency, partnership or joint venture”, tieing them together in a valid and binding contract.
To me this case affords a classic example of the wisdom of the Legislature in enacting the statute of frauds. Mississippi Code Annotated 1942 section 268 provides that:
“A contract for the sale of any personal property, goods, wares, or merchandise, for the price of fifty dollars or upward, shall not be allowed to be good and valid unless the buyer shall receive part of the personal property, goods, wares and merchandise, or shall actually pay or secure the purchase-money, or part thereof, or unless some note or memorandum, in writing, of the bargain be made and signed by the party to be charged by such contract, or his agent thereunto lawfully authorized,” (Emphasis added.)
There was no note or memorandum in writing in this case and according to the trial judge there was no enforceable contract. The evidence was in sharp conflict as to the intention of the parties and as to the terms, if any, of the so-called oral agreement, and yet this involved the expenditure of $92,500, a big deal even in these inflated times.
The Chancellor did the best he could' with the factual situation with which he-was confronted. I certainly can not say that he was manifestly wrong, when he-found that the agreement was of such a nature as not to be enforceable in a court of equity, and also that the contract, not being in writing, was in violation of the statute of frauds. I feel that the suggestion of error should have been sustained.
PATTERSON, J., joins in this dissent..